(No. 55874.—

THE PEOPLE OF THE STATE OF ILLINOIS, Appellant, v. R.D.S., a Minor, Appellee.

*Opinion filed January 24, 1983.*

GOLDENHERSH and UNDERWOOD, JJ., specially concurring.

SIMON, J., and RYAN, C.J., dissenting.

Tyrone C. Fahner, Attorney General, of Springfield, and John A. Barra, State's Attorney, of Peoria (Ellen M. Flaum and Terence M. Madsen, Assistant Attorneys General, of Chicago, and John X. Breslin, of the State's Attorneys Appellate Service Commission, of Ottawa, of counsel), for the People.

Robert Agostinelli, Deputy Defender, and Charles W. Hoffman, Assistant Defender, of the Office of the State Appellate Defender, of Ottawa, for appellee.

JUSTICE MORAN delivered the decision of the court and the following opinion in which JUSTICE WARD and JUSTICE CLARK join:

The respondent, represented by appointed counsel at all times, was adjudged a delinquent minor and committed to the Department of Corrections, Juvenile Division, by the circuit court of Peoria County. The appellate court, by order (100 Ill. App. 3d 1201), reversed, finding that the legal guardian did not receive proper notice of the proceedings. We allowed the State's petition for leave to appeal.

This case presents one issue: Is the jurisdiction of the circuit court properly invoked when the State fails to name or notify a court-appointed guardian of a minor in

a proceeding brought against the guardian's charge?

On September 25, 1980, the court, in proceedings not relevant to this case, found that the parents were unable to care for the minor and appointed, as legal guardian over the minor, the Guardian Administrator of the Department of Children and Family Services (guardian). The guardian placed the minor in the temporary care of his mother while it sought alternate placement.

On October 16, 1980, a petition charging the minor with theft was filed. Supplemental petitions charging other thefts were filed on November 12 and 25, 1980. These three petitions named the minor and his parents as respondents, but not the guardian. The minor and his mother were served with each of the three petitions. The father's address was listed on the petitions only as Los Angeles, California. He was neither served with summons nor given notice by any means of the October 16 or November 12 petitions. He was given notice by publication of the November 25 petition. No summons was served on the guardian.

A temporary detention order was entered on November 25, 1980, which ordered the minor into the temporary custody of the Juvenile Detention Center. This order permitted release of the minor to the custody of the guardian for screening. In addition, the order referred to the three petitions served on the minor and his mother and set the date for the adjudicatory hearing.

The adjudicatory hearing was held on December 15, 1980. The minor, his attorney, his mother, and the State's Attorney were present. The guardian was not. The minor admitted to the theft charge alleged in the October 16 petition, and upon motion by the State, the other two petitions were dismissed. The court found the minor to be delinquent and adjudged him a ward of the court.

The initial dispositional hearing took place on Decem-

ber 22, 1980. At this hearing, the guardian's caseworker appeared for the first time in the proceedings. The matter was continued until January 15, 1981. On this date, after reviewing the minor's record and the evidence presented, the court terminated the guardianship and committed the minor to the Department of Corrections, Juvenile Division, for an indefinite term not to exceed his 21st birthday.

The State maintains that the wording of section 4—1(2)(d) of the Juvenile Court Act (Act) (Ill. Rev. Stat. 1979, ch. 37, par. 704—1(2)(d)) requires that the petition name as respondent either the legal guardian *or* the person having custody or control over the minor. Since the minor was living with his mother when the petitions were filed, the State reasons that the mother was a "person having custody or control of the minor." It concludes, therefore, that since the mother was named as a respondent and served, there was no longer any statutory requirement to name and serve the legal guardian.

The State further claims that the guardian had *de facto* notice of the proceeding through the November 25 temporary detention order. We find nothing in the record, however, to indicate that the guardian received a copy of this order. The State also asserts that the guardian had *de facto* notice based on its caseworker's involvement with the minor. Finally, the State contends that the guardian was not deprived of an opportunity to participate in the proceedings and that neither the minor nor the guardian was prejudiced by the lack of formal notice.

The minor responds that the guardian was appointed after the court had found the parents unfit or unable to care for him and removed him from their custody. The minor asserts that the State's interpretation of section 4—1(2)(d) is at odds with the purpose of appointing a guardian, which is "to make important decisions in matters having a permanent effect on the life and develop-

ment of the minor \*\*\*." (Ill. Rev. Stat. 1979, ch. 37, par. 701—11.) Moreover, he contends that the State's interpretation conflicts with the due process requirements of juvenile proceedings as set out by the Supreme Court in *In re Gault* (1967), 387 U.S. 1, 18 L. Ed. 2d 527, 87 S. Ct. 1428. He also claims the State's reading of section 4—1(2)(d) is in conflict with this court's interpretation of that section. He points out that in *In re J.W.* (1981), 87 Ill. 2d 56, 60, it was said: "Every parent, legal guardian, and custodian, or when necessary the nearest relative, must be named as a respondent in the case. (Ill. Rev. Stat. 1979, ch. 37, par. 704—1.)" The minor further maintains that the failure to name the guardian as a party respondent deprived the guardian of its "right to be present, to be heard, to present evidence material to the proceedings, [and] to cross-examine witnesses \*\*\*." Ill. Rev. Stat. 1979, ch. 37, par. 701—20(1).

Due process of law requires that notice in juvenile proceedings be equivalent to that constitutionally required in criminal or civil cases. (*In re Gault* (1967), 387 U.S. 1, 18 L. Ed. 2d 527, 87 S. Ct. 1428.) This constitutional mandate is enumerated in sections 4—1 to 4—4 of the Act (Ill. Rev. Stat. 1979, ch. 37, pars. 704—1 to 704—4), which set out the requirements for valid notice. Section 4—1(2) lists those interested parties who must be named as respondents. This section provides:

"The petition shall \*\*\* set forth (a) facts sufficient to bring the minor under Section 2—1; (b) the name, age and residence of the minor; (c) the names and residences of his parents; (d) the name and residence of his legal guardian *or* the person or persons having custody or control of the minor, or of the nearest known relative if no parent or guardian can be found; *and* (e) if the minor upon whose behalf the petition is brought is detained or sheltered in custody, the date on which detention or shelter care was ordered by the court or the date set for a detention or shelter care hearing. If any of the facts herein required are not known by the petitioner, the peti-

tion shall so state." (Emphasis added.) (Ill. Rev. Stat. 1979, ch. 37, par. 704—1(2).)

While subsection (d) reads in the disjunctive, we note that the entire section reads in the conjunctive. A petition filed pursuant to section 4—1(2) is required to set forth facts for each of the subsections or else indicate that such facts are unknown.

The question to determine here is whether the mother had custody or control of the minor as contemplated by the Act. If she did not, then the guardian was required to be named as a respondent.

The Act provides that custody or guardianship granted thereunder continues until the court otherwise directs (Ill. Rev. Stat. 1979, ch. 37, par. 705—7(5)). The minor or any person interested in the minor may apply to the court for a change in custody of the minor or for restoration of the minor to the custody of his parents. (Ill. Rev. Stat. 1979, ch. 37, par. 705—8(3).) Moreover, "[w]henever the Department [of Children and Family Services] discharges a minor from its care and service, the Guardianship Administrator of the Department shall petition the court for an order terminating guardianship." Ill. Rev. Stat. 1979, ch. 37, par. 705—7(1)(f).

Under the Act, guardianship of the person of a minor includes "the rights and responsibilities of legal custody except where legal custody has been vested in another person or agency." (Ill. Rev. Stat. 1979, ch. 37, par. 701—11(c).) "Legal custody" means the relationship created by an order of court which imposes on the custodian the responsibility of physical possession of a minor, the duty to protect, train and discipline him and to provide him with food, shelter, education and ordinary medical care. Ill. Rev. Stat. 1979, ch. 37, par. 701—12.

Neither the minor, the minor's mother, the guardian, nor any other interested party ever filed a petition with the circuit court seeking a change in custody prior to the filing of the three petitions at issue here. Legal custody of

the minor was never removed from the guardian and restored to the minor's mother.

The mother, at the time the petitions were filed, did not have the status of a person having custody or control over the minor as the State urges. She was properly named a respondent pursuant to section 4—1(2)(c) because she was a parent. However, the mother could not be named under section 4—1(2)(d) as an alternative to naming the legal guardian. Section 4—1(2)(d) required that the petitions filed in this case name the guardian as a necessary party respondent.

The notice provisions of the Act further provide that "[a] summons shall be directed to the minor and to *each* person named as a respondent in the petition." (Emphasis added.) (Ill. Rev. Stat. 1979, ch. 37, par. 704—3(1).) A pleading that does not name and notify a necessary respondent in a juvenile proceeding fails to invoke the jurisdiction of the court and thereby renders its orders void. See *People ex rel. McEntee v. Lynch* (1906), 223 Ill. 346; *In re R.P.* (1981), 97 Ill. App. 3d 889; *In re C.G.* (1979), 69 Ill. App. 3d 56.

Here, as earlier stated, the State neither named nor notified the guardian of the December 15 adjudicatory hearing. By not doing so, the trial court's jurisdiction was not properly invoked and its order of December 15 and subsequent orders were void.

The judgment of the appellate court is affirmed.

*Judgment affirmed.*

JUSTICE GOLDENHERSH, specially concurring:

I agree that because the guardian did not receive notice of the proceedings the judgment of the circuit court was properly reversed. I cannot, however, agree with that portion of the opinion which states: "A pleading that does not name and notify a necessary respondent in a juvenile proceeding fails to invoke the jurisdiction of the court and thereby renders its orders void." (94 Ill. 2d at 83.) As au-

thority for this statement the majority opinion cites *People ex rel. McEntee v. Lynch* (1906), 223 Ill. 346. When *McEntee* was decided "An Act to regulate the treatment and control of dependent, neglected and delinquent children" provided:

"Sec. 2. The circuit and county courts of the several counties in this State, shall have original jurisdiction in all cases coming within the terms of this act. In all trials under this act any person interested therein may demand a jury of six or the judge of his own motion may order a jury of the same number to try the case.

Sec. 3. In counties having over 500,000 population, the judges of the circuit court shall at such times as they shall determine, designate one or more of their number, whose duty it shall be to hear all cases coming under this act. A special court room to be designated as the juvenile court room, shall be provided for the hearing of such cases, and the findings of the court shall be entered in a book or books to be kept for that purpose, and known as the 'Juvenile Record,' and the court may for convenience be called the 'Juvenile Court.' " (Hurd's Ill. Rev. Stat. 1905, ch. 23, pars. 170, 171.)

At that time section 12 of article VI of the Illinois Constitution of 1870 provided that "the circuit courts shall have original jurisdiction of all causes in law and equity" and that county courts had original jurisdiction in certain specified matters "and such other jurisdiction as may be provided for by general law."

A court of general jurisdiction was presumed to have jurisdiction to render any judgment entered by it (*Bartunek v. Lastovken* (1932), 350 Ill. 380), and every reasonable presumption was indulged in favor of its jurisdiction. (*Matthews v. Hoff* (1885), 113 Ill. 90.) However, no such presumption prevailed in connection with special statutory jurisdiction. In such cases jurisdiction was never presumed, and whatever the jurisdiction of the court, the proceedings were required to be in strict conformity with the statute. (*Brown v. VanKeuren* (1930), 340 Ill. 118.) As said in *City of Chicago v. Hitt* (1929), 334 Ill. 619, 628, "A court of

general jurisdiction may have a special statutory jurisdiction conferred upon it not exercised according to the course of common law and which does not belong to it as a court of general jurisdiction. Nothing is taken by intendment in favor of the jurisdiction of a court of limited jurisdiction, or of a court of general jurisdiction while exercising special or limited powers. In the latter case the record must show the facts which authorize the court to act, and a judgment rendered without jurisdiction may be treated as void everywhere."

Article VI, section 9, of the Constitution of 1970 provides: "Circuit courts shall have original jurisdiction of all justiciable matters except when the Supreme Court has original and exclusive jurisdiction \*\*\*." In view of this broad grant of jurisdiction in our present constitution, the rationale of authorities such as *McEntee* is no longer applicable. The defect in this case is not that there was a failure to invoke jurisdiction; the court had jurisdiction, and there was no necessity for invoking it. The defect here was that the required statutory notice was not given and the order was therefore erroneously entered.

JUSTICE UNDERWOOD joins in this special concurrence.

JUSTICE SIMON, dissenting:

The notice provided to the minor and to his mother, with whom he was residing, was more than sufficient to apprise him of the charges against him and to permit him to prepare and present a defense. I would not overturn the circuit court's adjudication of delinquency on the grounds of inadequate notice under either the statute or the Constitution.

Section 4—1(2) of the Juvenile Court Act (Ill. Rev. Stat. 1979, ch. 37, par. 704—1(2)) requires that certain persons be named in a petition initiating juvenile proceedings against a minor. The prosecutor must include the name of

the minor's "legal guardian or the person or persons having custody *or* control of the minor \*\*\*." (Emphasis added.) (Ill. Rev. Stat. 1979, ch. 37, par. 704—1(2)(d).) The use of the word "or" in the statute permits the prosecutor to name *either* the guardian *or* a person having "custody or control" of the minor. I believe that the minor's mother had "custody or control" of her son by virtue of his residence in her home pending "alternative placement." Therefore, the naming of the mother in the petition was sufficient to comply with section 4—1(2)(d), and it was not necessary to name or notify the guardian.

The majority avoids this result by adopting an exceedingly technical and erroneous interpretation of the phrase "custody or control." The majority holds that "custody or control" in section 4—1(2)(d) is identical to "legal custody," which is defined in section 1—12 (Ill. Rev. Stat. 1979, ch. 37, par. 701—12). In this case the Guardian Administrator of the Department of Children and Family Services possessed "legal custody" over the minor by virtue of his guardianship. (Ill. Rev. Stat. 1979, ch. 37, par. 701—11(c).) Because "legal custody" cannot change except by order of the court, the guardian's administrative act placing the minor in his mother's home could not create "legal custody" in her. Thus, the majority argue that the notice to the mother was not to a person having "legal custody" over the minor.

The majority's interpretation of section 4—1(2)(d) ignores the language of the statute. If the legislature had meant "legal custody" in this section it would have used that phrase and not "custody or control." The use of the phrase "custody or control" implies that the legislature meant to provide for the many informal and unconventional relationships between adults and a minor. I would hold that the mother's temporary custody of the minor was more than sufficient to constitute "custody or control" under section 4—1(2)(d) and that consequently notice to the

guardian was not required by the statute.

This interpretation of section 4—1(2)(d) is consistent with its purpose of achieving due process by providing notice of the proceedings to the minor and other interested parties. (See *In re J.W.* (1981), 87 Ill. 2d 56, 60.) In *In re Gault* (1967), 387 U.S. 1, 33, 18 L. Ed. 2d 527, 549, 87 S. Ct. 1428, 1446, the United States Supreme Court observed that notice is required in a juvenile proceeding in order to inform the minor of the precise nature of the charges against him and to afford him with a "reasonable opportunity to prepare." The record in this case illustrates that notice to a parent in temporary "custody or control" of the minor was more than sufficient. The minor, assisted by legal counsel, fully contested the matter at each stage in the proceedings.

For much the same reason, the failure to notify the guardian of the proceedings does not violate due process either. It is important to note that this is not a case in which the guardian is objecting to the adjudication of *his* rights or those of the minor without notice. (*Cf. In re Anast* (1974), 22 Ill. App. 3d 750, 756 (due process was violated where a stepfather was not notified of proceedings in which his custody of minor children was terminated).) Here it is the juvenile who argues that his rights were violated by the failure to notify the guardian of the proceedings. As evidenced by the conduct of the proceedings the notice to the minor and his mother was more than sufficient to inform him of the charges and to permit the preparation of a suitable defense.

Because I cannot discover any statutory or constitutional defect arising from the failure to notify the guardian I would reverse the decision of the appellate court.

CHIEF JUSTICE RYAN joins in this dissent.