LONNIE AHART, Plaintiff, v. LEE YOUNG, Indiv. and as Agent for South Louisiana Stud, Inc., *et al.*, Defendants (The Jockey Club, Defendant-Appellee; Runge & Gumbel, P.C., Intervenor-Appellant).

Fifth District   No. 5—87—0737

Opinion filed February 9, 1990.

David C. Davis, of Runge & Gumbel, P.C., of Collinsville, for appellant.

Curtis L. Blood, of Reed, Armstrong, Gorman, Coffey, Thomson & Gilbert, of Edwardsville, for appellee.

JUSTICE HOWERTON delivered the opinion of the court:

Jurisdiction means power, and cases involving questions of juris-

diction are most serious, because they touch the foundation of a free society—the power of the sovereign, through her courts, to select the winner of a dispute between otherwise free parties, and, once selection is made, to coerce compliance with the decision; but, sometimes cases dealing with jurisdiction have the raciest facts. This is such a case.

Never Doubt, a thoroughbred stallion racehorse, was registered with The Jockey Club, a New York not-for-profit corporation. That registration made Never Doubt a racehorse, for no thoroughbred horse can race legally in Illinois unless registered with The Jockey Club.[1] As "imprimatur" means "let it be printed," so The Jockey Club's certificate of registration means "let the horse be raced."

No horse races forever though, and when a thoroughbred stallion has wheezed past his final finish line, his racing career run-dry, he is called upon to pass his bloodlines to the next horse generation by being put out to stud. But, racing is the key; it gives value to bloodlines, thereby opening the breeding barn door. The certificate of registration issued by The Jockey Club is, therefore, not only the exclusive ticket to the track, it is the main ticket for a stallion's entry into the more pleasant pastures of retirement.

The certificate of registration issued by The Jockey Club in New York forms the nexus of the jurisdictional question.

Ahart, in Illinois, sent the application for Never Doubt's certificate of registration together with the requisite fee and proof of ownership to The Jockey Club in New York.

The Jockey Club registered Never Doubt, issued the certificate in New York and sent it to Ahart in Illinois.

The Jockey Club has no office in Illinois, does not own, possess or control any property in Illinois, does not have a telephone number or mailing address in Illinois, has no stewards, officers, agents or employees residing in Illinois, sends no employees into Illinois, and has no bank account or corporate records in Illinois.

Never Doubt ran his last race, but, as was never doubted, he was retired to stud. He was shipped to Louisiana to South Louisiana Stud,

---

[1]The Illinois Horse Racing Act of 1975 (Ill. Rev. Stat. 1985, ch. 8, par. 37—3.06(e)) defines thoroughbred horse racing as:

" 'Thoroughbred horse racing' means the form of horse racing in which each participating horse is a Thoroughbred horse, registered as such with and meeting the requirements of and approved by The Jockey Club of New York (including racing permits issued to foreign Thoroughbred horses), mounted by a jockey and engaged in races on the flat. Thoroughbred horse racing shall include a steeplechase or hurdle race."

Inc., and Lee Young where he was to syndicate. Syndication meant that Never Doubt would pass on his bloodlines in the usual way and that his owner, Ahart, and Young and South Louisiana Stud, Inc., all would get money for Never Doubt's efforts.

Although they had no ownership interest in Never Doubt, Young and South Louisiana Stud, Inc., applied to The Jockey Club for a duplicate certificate. The Jockey Club obliged and issued them a duplicate. Young and South Louisiana Stud, Inc.'s application, fee payment, and certificate issuance were handled in the same manner as Ahart's was, except the application fee and certificate of registration flowed between Louisiana and New York, instead of between Illinois and New York.

Discovering its mistake, The Jockey Club asked for the duplicate certificate back. Young and South Louisiana Stud, Inc., refused, and held Never Doubt out as their own, allowing him to continue to service mares.

Then things really went sour. Never Doubt got venereal disease and for a time Never Doubt never could. Sterile stallions command no stud fees; Ahart suffered financial loss.

Ahart sued Young, South Louisiana Stud, Inc., and The Jockey Club. Runge & Gumbel, P.C., lawyers who own a piece of Never Doubt, intervened.

The Jockey Club objected to Illinois jurisdiction by filing a special and limited appearance to quash the summons and dismiss the action for lack of jurisdiction. Ill. Rev. Stat. 1987, ch. 110, par. 2—301.

The circuit court of Madison County granted The Jockey Club's special and limited appearance. The case against The Jockey Club was at an end. But then the most curious things happened. Ahart filed a motion to reconsider. Before the motion to reconsider was heard, The Jockey Club filed a motion to dismiss plaintiff's complaint. Intervenors then filed a motion to reconsider. Both motions to reconsider, as they pertained to The Jockey Club, were denied.

Only intervenor appeals, and The Jockey Club is the only defendant to this appeal.

We reverse and remand, holding that Illinois has jurisdiction over The Jockey Club.

## I

There are two kinds of appearances, one called "special," the other "general," and the distinction between them is critical insofar as jurisdiction is concerned.

Special appearances are made to contest jurisdiction and are cre-

ated by statute. The Code of Civil Procedure provides:

> (a) Prior to filing any other pleading or motion, a special appearance may be made either in person or by attorney for the purpose of objecting to the jurisdiction of the court over the person of the defendant. A special appearance may be made as to an entire proceeding or as to any cause of action involved therein. Every appearance, prior to judgment, not in compliance with the foregoing is a general appearance. Ill. Rev. Stat. 1985, ch. 110, par. 2—301.

A general appearance, however, is a horse of a different color; a general appearance does not contest jurisdiction and can confer jurisdiction:

> "[A] defendant may waive the service of process and confer jurisdiction over his person upon the court. This may be done where a defendant fails to limit his appearance before the court to the narrow issue of service of process and instead at the same time seeks further relief from the court." *Community Bank & Trust Co. v. Pavlich* (1980), 84 Ill. App. 3d 1080, 1082, 406 N.E.2d 164, 166.

The Jockey Club made a general appearance in the circuit court, and therefore, waived its right to contest that court's *in personam* jurisdiction.

The Jockey Club's first motion was entitled "Special and Limited Appearance," and was a proper special appearance, limited to asserting that Illinois lacked jurisdiction. Its second motion, however, entitled "Motion to Dismiss," was a general appearance, because of the absence of the special and limited appearance language.[2] A special appearance must be designated a special appearance to prevent it from being construed as a general appearance (*Greenberg v. Neiman* (1943), 320 Ill. App. 99, 49 N.E.2d 817), and an appearance not shown as special must be taken as general. *Flake v. Carson* (1864), 33 Ill. 518.

The Jockey Club, however, argues that its motion to dismiss was a nullity, saying: (1) the circuit court had dismissed the complaint, ruling that it lacked jurisdiction, (2) the motion to reconsider did not stay the effect of dismissal, and therefore, (3) the circuit court, even if it had had jurisdiction, had lost it because more than 30 days had

---

[2]The second motion to dismiss also contained assertions beyond the jurisdictional question. Specifically, defendant alleged that it had not received a copy of a bankruptcy order or certain other discovery material even though more than 30 days had elapsed since plaintiff had been ordered to produce such materials.

elapsed from entry of the order sustaining the special and limited appearance. The net result, defendant argues, is that since 30 days had elapsed, the motion to dismiss filed by The Jockey Club is a nullity, conferring no jurisdiction.

This argument fails. The question is not the effect of the motions to reconsider. The question is whether The Jockey Club submitted to the jurisdiction of the court by filing the motion to dismiss after the court had sustained its special and limited appearance. Whereas the effect of motions to reconsider focuses on the court and its retention of jurisdiction, submission to jurisdiction focuses on the defendant and the defendant's acts. (See, *e.g.*, *Bradshaw v. Pellican* (1987), 152 Ill. App. 3d 253, 256, 504 N.E.2d 211, 213 ("[t]he critical question is whether defendant has taken any step"); *McKnelly v. McKnelly* (1976), 38 Ill. App. 3d 637, 639, 348 N.E.2d 500, 502 ("[a]ny action"); *Hackler v. Cardinal Newman College* (1979), 71 Ill. App. 3d 665, 389 N.E.2d 960; *People ex rel. Covington v. Johnson* (1967), 79 Ill. App. 2d 266, 224 N.E.2d 664.) Accordingly, in the case at bar, we look to defendant's act of filing its motion to dismiss, and find that such conduct was sufficient to constitute a waiver of the jurisdictional issue, and submission to the power of Illinois courts. Therefore, the effect of the motion to reconsider is irrelevant.

To drive the point past the finish line, assume The Jockey Club's strongest position is true. Assume the court did not have jurisdiction, that the motion to reconsider did not operate to stay the time, and whatever jurisdiction that once existed evaporated. By analogy then, the case would look like a case where the court never had obtained jurisdiction, for example, because of no service of process, but in which defendant appeared anyway, thereby conferring jurisdiction. In that case, the lack of jurisdiction before submission by defendant is irrelevant. Likewise, here it is irrelevant whether jurisdiction existed before The Jockey Club filed its second document, its motion to dismiss. By so filing, The Jockey Club agreed to "race" its case in Illinois and to abide by the judge's call at the finish line.

## II

Illinois also has jurisdiction over The Jockey Club because it is doing business here. Under the "doing business" doctrine, if a nonresident corporation is doing business in Illinois, it will be considered to have consented to being sued in Illinois. (*Cook Associates, Inc. v. Lexington United Corp.* (1981), 87 Ill. 2d 190, 199, 429 N.E.2d 847, 851.) Doing business for the purposes of jurisdiction has been defined as operating within a State not occasionally or casually, but instead

with a fair measure of performance and continuity. *Cook Associates, Inc. v. Lexington United Corp.* (1981), 87 Ill. 2d 190, 429 N.E.2d 847.

■ The Jockey Club's business activities in Illinois are neither occasional nor casual. Instead it operates in Illinois with a "fair measure of permanence and continuity," and the Illinois legislature ensured this fact when it passed the Horse Racing Act of 1975. This Act provides that defendant will do business with *every* owner or breeder who wishes to race a thoroughbred in Illinois. Ill. Rev. Stat. 1985, ch. 8, par. 37—3.06(e).

The Jockey Club complains that even though the effect of the Illinois Horse Racing Act of 1975 creates a monopoly for the defendant, the monopoly came about because of the actions of the Illinois legislature and not through any actions of the defendant. We find this argument unpersuasive. The record does not reflect that defendant is an unwilling participant in the field of Illinois thoroughbred racing.

The Jockey Club further argues that the certificates of registration, necessary for thoroughbreds to race in Illinois, are not "products" or "goods." Well, the livelihood of Illinois thoroughbred owners and breeders depends on The Jockey Club certificates.

The Jockey Club has purposefully directed its commercial efforts toward Illinois residents by sending them pamphlets which describe its services and its certificates and by selling them those services and certificates. The record establishes that The Jockey Club sent plaintiff literature explaining its services and fees. When plaintiff paid the fee and provided proof of ownership, The Jockey Club sent plaintiff a certificate of registration. But, that is not the end of the matter. There are ongoing obligations between The Jockey Club and its Illinois registrants which continue after the purchase of the original registration certificate. For example, every stallion owner must file a detailed yearly report of all thoroughbred mares bred to that stallion during that year. Additionally, all sales, transfers and deaths of registered horses promptly must be reported to defendant.

"There is no all-inclusive test for determining whether a foreign corporation is doing business in this State." (*Cook Associates, Inc. v. Lexington United Corp.* (1981), 87 Ill. 2d 190, 201, 429 N.E.2d 847, 852.) Our supreme court has stated that, "in general, the term means that the corporation is conducting business in Illinois 'of such a character and extent as to warrant the inference that the corporation has subjected itself to the jurisdiction' *** [of Illinois]." *Cook Associates, Inc. v. Lexington United Corp.* (1981), 87 Ill. 2d 190, 201, 429 N.E.2d 847, 852, quoting *Pembleton v. Illinois Commercial Men's Association* (1919), 289 Ill. 99, 104, 124 N.E. 355, 358, *appeal dismissed* (1920),

253 U.S. 499, 64 L. Ed. 1032, 40 S. Ct. 483.

While admittedly there is no all-embracing test for determining whether a foreign corporation is doing business in Illinois for jurisdictional purposes, measured by any reasonable standard, we are satisfied that subjecting The Jockey Club to the jurisdiction of Illinois courts does not offend traditional notions of fair play. Defendant has more than minimal contacts with Illinois; it carries on its usual and customary business in Illinois when it routinely sends to and receives from Illinois literature, applications, fees, certificates of registration, and yearly reports.

An out-of-State corporation cannot fire economic salvos into this State, monopolize inside this State an entire economic field, force all who would compete to secure its imprimatur before being able to enter into business, reap the benefits of a monopoly granted by the People of this State, and then claim it is not doing business in this State, claim that the piece of paper which is the *sine qua non*, a Latin term meaning "that without which the thing cannot be," is neither product nor goods. Such an out-of-State corporation is doing business in Illinois, is constructively present in Illinois, and the law of Illinois justifiably implies the assent of that corporation to service upon its agent in Illinois. See *Cook Associates, Inc. v. Lexington United Corp.* (1981), 87 Ill. 2d 190, 199, 429 N.E.2d 847.

The circuit court has jurisdiction for two reasons. First, defendant entered a general appearance when it filed its second motion to dismiss. Second, defendant was doing business in Illinois.

Therefore, the order of the circuit court of Madison County quashing service of process and dismissing defendant from this action is reversed and this cause is remanded for further proceedings.

Reversed and remanded.

LEWIS, P.J., and GOLDENHERSH, J., concur.