753 N.E.2d 314 (2001)
323 Ill. App.3d 839
257 Ill.Dec. 119
In re K.C., a Minor (The People of the State of Illinois, Petitioner-Appellee, v. Kenya C., Respondent-Appellant).
No. 1-99-0508.
Appellate Court of Illinois, First District, First Division.
June 25, 2001.
*315 Rita A. Fry, Public Defender of Cook County (Diane Slocum, Assistant Public Defender, of counsel), Chicago, for Respondent-Appellant.
Richard A. Devine, State's Attorney of Cook County (Renee Goldfarb, Jennifer Streeter, and Pavlina Kochankovska, Assistant State's Attorneys, of counsel), Chicago, for Petitioner-Appellee.
Justice COHEN delivered the opinion of the court:
Article XI-A of the Probate Act of 1975 (755 ILCS 5/11a-1 et seq. (West 1998)) (Probate Act) empowers the courts of this state to appoint plenary guardians of the person for adults who lack the ability to care for themselves and manage their own lives. Kenya C. was adjudicated disabled under the above article. On March 25, 1993, the probate court appointed a plenary guardian over Kenya's person. In 1996, Kenya gave birth to a child, K.C. The State filed a petition for wardship and temporary custody of K.C., which was granted. The State later filed a petition for the termination of Kenya's parental rights and the appointment of a guardian with the power to consent to K.C.'s adoption, which was also granted. At each dispositional hearing described above, the juvenile court judge was advised that the plenary guardian of Kenya was neither named in the petitions nor served with notice of motion. The juvenile court judge chose to proceed with the hearings resulting in K.C. becoming a ward of the court and Kenya subsequently having her parental rights terminated.
The issue: whether the plenary guardian of a person adjudicated disabled under the Probate Act is a necessary party under the Juvenile Court Act of 1987 (705 ILCS 405/1 et seq. (West 1998)) (Juvenile Court Act) when the disabled person's parental rights are at stake. This court's answer is the only answer consistent with constitutional guarantees, Illinois law, the purposes of plenary guardianship and the dictates of common sense. The plenary guardian of a disabled parent whose parental rights are the subject of proceedings under the Juvenile Court Act is a *316 necessary party under the Act and must be named as a party respondent and served notice of all such proceedings.
The judgments of the juvenile court judge are reversed.

1. Background
The record reflects that respondent Kenya C. was adjudicated disabled in the probate of the circuit court of Cook County under section 11a-3 of the Probate Act (755 ILCS 5/11a-3 (West 1998)). The letter of office issued by the probate court on March 25, 1993, states: "THE OFFICE OF THE STATE GUARDIAN has been appointed plenary guardian of the person of KENYA [C.], a disabled person, and is authorized to have under the direction of the court the custody of the ward and to do all acts required by law." (Emphasis added.)
On February 3, 1996, Kenya gave birth to a son, K.C. K.C. tested positive at birth for the presence of both serum cocaine metabolites and syphilis antibodies. On February 16, 1996, the State filed a petition for adjudication of wardship and a motion for temporary custody with respect to K.C., alleging both neglect (predicated on both injurious environment and drug exposure) and abuse (predicated on substantial risk of physical injury). 705 ILCS 405/2-3(1)(b), (1)(c), (2)(ii) (West 1998). The State's petition further alleged that K.C. was dependent, stating that the "mother is diagnosed as paranoid schizophrenic and refuses to take medication; [the] mother is unable to care for [the] child due to hospitalizations and [the] father is unknown." 705 ILCS 405/2-4 (West 1998). Notice of the disposition hearing was served on Kenya by substitute service: the unknown father was served by publication, as allowed under section 2-15 of the Juvenile Court Act (705 ILCS 405/2-15 (West 1998)). Kenya's plenary guardian of the person was not served. After a disposition hearing, the trial court adjudged K.C. (who was represented in that hearing by appointed bar attorney Martin J. Wilson as guardian ad litem) a ward of the court and granted temporary custody of K.C. to D. Jean Ortega-Piron, the Department of Children and Family Services (DCFS) guardianship administrator. 705 ILCS 405/2-27 (West 1998).[1]
On November 5, 1997, the State filed a petition for the termination of Kenya's parental rights to K.C. and the appointment of a guardian with the power to consent to K.C.'s adoption. 705 ILCS 405/2-29 (West 1998). Notice of the hearing on the petition was served personally on Kenya, Ortega-Piron, and K.C. (in care of Ortega-Piron). The unknown father was served by publication. Kenya's plenary guardian of the person was not served. In her answer to the State's petition, Kenya disputed that termination of her parental rights would be in K.C.'s best interests.
A hearing was scheduled on the State's petition for March 31, 1998, but was subsequently continued. On March 31, 1998, the court entered an order appointing Mr. Patrick Schlee as guardian ad litem for Kenya.[2]
*317 After nine more continuances of the matter, an order was finally entered setting the case for hearing on January 28, 1999, on the petition for termination of parental rights.
On January 25, 1999, Kenya's attorney, assistant public defender Nancy Joslyn, filed on Kenya's behalf a motion to dismiss the termination proceedings. The motion stated that Kenya was disabled, had been under adult guardianship since 1993 and that both the fact of Kenya's wardship and the identity of Kenya's adult guardian, Ms. Patricia Young, had been available to the State. The motion argued that because Kenya was a necessary party to the termination proceedings, and because Kenya's guardian "stands in, in effect, by operation of law" for her ward, the guardian was therefore a necessary party as well. The motion also noted that nowhere in the Juvenile Court Act is the plenary adult guardian of an otherwise necessary party to termination proceedings exempted from service. The motion concluded that failure to serve the plenary guardian with proper notice of motion should result in the dismissal of the State's petition.
The record on appeal contains no written response from the State to Kenya's motion to dismiss. The trial court addressed the merits of the motion on January 28, 1999, when the parties appeared for the scheduled termination hearing. In discussing the matter of Kenya's adult guardian, the trial court engaged in the following dialog with Mr. Schlee, whom the court had previously appointed as guardian ad litem for Kenya:
"THE COURT: The situation is this: It's clear from the pleadings and from the causes in front of me concerning [K.C.] * * * that the mother in fact had a guardian appointed for her and that guardian preceded your appointment, counsel. And actually Ms. Joslyn, who is the public defender appointed for the mother, has applied in a pleading before this court that the office of the State Guardian has been appointed as the plenary guardian of Kenya [C.] on March 25, 1993. So she has a guardian.
MR. SCHLEE: Okay, Judge.
THE COURT: I think it gets confusing, and I'm not exactly certain of all the intricacies of the law on this, but sometimes it's just a matter of course that a person in like circumstance such as the mother has a state guardian and comes into court and has a legal representative of the public defender and another guardian appointed. And it strikes me as being somewhat excessive because I just don't understand how many people it takes to do this when there's an order already in effect. So with all due respect.
MR. SCHLEE: No problem, Judge."
The court then allowed without objection Mr. Schlee's oral motion to withdraw as Kenya's guardian ad litem, leaving Kenya without a guardian of any kind present in court for the upcoming termination hearing.
The trial court then asked the State for its position with respect to Kenya's motion to dismiss. The assistant State's Attorney *318 argued that because Kenya had filed a response to the termination petition and appeared generally before the court with respect to K.C.'s case (as opposed to filing a special appearance, as formerly required by section 2-301 of the Code of Civil Procedure (735 ILCS 5/2-301 (West 1996)) (now, as amended, 735 ILCS 5/2-301 (West 1998))) while represented by appointed counsel, Kenya had waived any objection to the court's jurisdiction. The assistant public defender replied that "[w]hether or not [Kenya] personally appears here has nothing to do with whether or not the guardian of the disabled mother was given notice of the proceeding. She was not given proper notice of the proceedings and therefore this court is deprived of jurisdiction." The assistant public defender further stated that the appearance was filed on behalf of Kenya herself, and not on behalf of Kenya's guardian. The trial court then asked:
"THE COURT: So how can you now say [Kenya] is not properly before the court when you entered an appearance on behalf of her?
MS. JOSLYN: Because the guardian has never had service of summons and [it] was never waived.
THE COURT: You waived it.
MS. JOSLYN: I never waived it. * * * The point is that there is no indication that this guardian of this disabled person was ever present or notified and we can not [sic] assume proper jurisdiction.
* * *
THE COURT: We have a personal service document that was served upon the mother and that is [in] the court file. You were appointed, you filed an answer on the mother's behalf, never raising jurisdiction; you engaged in discovery; you set a trial date; you participated in a forensic services order that required the mother to go in and be interviewed extensively. There is alot [sic] of discovery that has gone forward here. And as a result you have, I believe according to the law, waived anything with regard to [K.C.] insofar as jurisdiction. Your motion with regard to [K.C.] will be denied.
MS. JOSLYN: Judge just for the record. I don't believe that as a public defender I could waive her constitutional right as to inquiring as to her capacity to waive. She has no capacity to waive it.
THE COURT: Madam, you are appointed her attorney and you came in on every court date and you filed as on behalf of your client thereby waiving the jurisdictional issue. * * * So I don't see that the jurisdiction is an issue. I truly don't."
The court next ruled that it lacked jurisdiction with respect to the separate petition for the termination of Kenya's parental rights to K.C.'s sister, A.C., stating: "So as the mother stands before me * * * she is a disabled person and she does not have counsel and she has not entered an appearance and she has not entered an answer and so, therefore, I believe that there is no jurisdiction." In response to the assistant State's Attorney's argument that the mother had appeared generally with respect to A.C. by being in court, the court answered: "Well, now wait a second. You know, let's be serious now, she is a disabled person." The court then proceeded with the termination hearing as to K.C. Following the hearing, the trial court entered an order finding Kenya an unfit parent, terminating her parental rights to K.C. and appointing Ortega-Piron as guardian of K.C. with the power to consent to his adoption.
*319 On appeal, Kenya challenges the order of the circuit court terminating her parental rights and appointing a guardian with the power to consent to K.C.'s adoption.

2. Analysis
We first address the trial court's determination that Kenya had waived any objection to the jurisdiction of the trial court predicated on the failure to name and serve notice upon her plenary guardian of the person as a necessary party with respect to the termination proceedings. The trial court appeared to conclude that because Kenya's appointed counsel had filed a general appearance on Kenya's behalf, Kenya had thereby waived any further jurisdictional objection under the former special appearance statute. 735 ILCS 5/2-301 (West 1996). Had Kenya's objection related to the court's jurisdiction over her own person (and had she not been adjudicated disabled and been under plenary guardianship), we would agree: the filing of a general appearance under the statute then in effect would have resulted in the waiver of further objection to personal jurisdiction. Ahart v. Young, 194 Ill.App.3d 461, 463-65, 141 Ill.Dec. 498, 551 N.E.2d 685 (1990). However, the failure to name and serve a necessary party in a juvenile proceeding (in this case Kenya's plenary guardian of the person) raises the question not of personal jurisdiction over that party, but of the subject matter jurisdiction of the court. People v. R.D.S., 94 Ill.2d 77, 83, 67 Ill.Dec. 813, 445 N.E.2d 293 (1983) ("A pleading that does not name and notify a necessary respondent in a juvenile proceeding fails to invoke the jurisdiction of the court and thereby renders its orders void"); In re A.H., 195 Ill.2d 408, 423-24, 254 Ill.Dec. 737, 748 N.E.2d 183 (2001); In re C.R.H., 163 Ill.2d 263, 271-72, 206 Ill.Dec. 100, 644 N.E.2d 1153 (1994); In re J.L.S., 188 Ill.App.3d 815, 816, 136 Ill.Dec. 129, 544 N.E.2d 815 (1989). Such an objection cannot be waived and may be raised at any time. Segers v. Industrial Comm'n, 191 Ill.2d 421, 427, 247 Ill.Dec. 433, 732 N.E.2d 488 (2000); Geise v. Phoenix Co. of Chicago, Inc., 159 Ill.2d 507, 515, 203 Ill.Dec. 454, 639 N.E.2d 1273 (1994). Neither Kenya's presence in court nor the appearance of Kenya's attorney could have resulted in the waiver of such an objection, and the trial court erred in so ruling.
Kenya does not appeal the adjudication of wardship of K.C., but only the termination of her parental rights to K.C. and the appointment of a guardian with the power to consent to K.C.'s adoption. It is axiomatic, however, that "[c]ourts, at every level, have an obligation to raise the lack of jurisdiction sua sponte." People v. Wright, 189 Ill.2d 1, 34, 243 Ill.Dec. 198, 723 N.E.2d 230 (1999) (Freeman, C.J., specially concurring). We therefore consider whether the trial court had jurisdiction to adjudicate K.C. a ward of the court prior to its termination of Kenya's parental rights.[3]
"The basic requirements of due process and fairness must be satisfied in juvenile court proceedings." People v. D.J., 175 Ill.App.3d 491, 493, 124 Ill.Dec. 931, 529 N.E.2d 1048 (1988), citing In re Gault, 387 U.S. 1, 87 S.Ct. 1428, 18 L.Ed.2d 527 (1967); People v. R.D.S., 94 Ill.2d 77, 81, 67 Ill.Dec. 813, 445 N.E.2d *320 293 (1983). "In a juvenile proceeding adequate notice to the minor and his parents is a requirement of due process." In re J.P.J., 109 Ill.2d 129, 135, 92 Ill.Dec. 802, 485 N.E.2d 848 (1985). The question before uswhether the plenary guardian of the person of an adult parent must be named and served as a necessary party to juvenile court proceedings for the adjudication of the adult ward's minor child to himself become a ward of the courtis one of statutory construction, which we consider de novo. Village of Mundelein v. Franco, 317 Ill.App.3d 512, 517, 251 Ill.Dec. 515, 740 N.E.2d 801 (2000).
"`In the exercise of statutory construction, our primary task is to ascertain and effectuate the intent of the legislature. In interpreting a statute we may consider the reason and necessity for the law, the evils it was intended to remedy, and its ultimate aims. Also, we must assume that the legislature did not intend an absurd or unjust result. However, our inquiry must always begin with the language of the statute, which is the surest and most reliable indicator of legislative intent. The language of the statute must be given its plain and ordinary meaning, and where the statutory language is clear and unambiguous, we have no occasion to resort to aids of construction. Nor, under the guise of statutory interpretation, can we "correct" an apparent legislative oversight by rewriting a statute in a manner inconsistent with its clear and unambiguous language. [Citations.]'" Franco, 317 Ill.App.3d at 517, 251 Ill.Dec. 515, 740 N.E.2d 801, quoting People v. Pullen, 192 Ill.2d 36, 42, 248 Ill.Dec. 237, 733 N.E.2d 1235 (2000).
Section 1-5 of the Juvenile Court Act specifies the rights of parties to proceedings thereunder:
"[T]he minor who is the subject of the proceeding and his parents, guardian, legal custodian or responsible relative who are parties respondent have the right to be present, to be heard, to present evidence material to the proceedings, to cross-examine witnesses, to examine pertinent court files and records and also, although proceedings under this Act are not intended to be adversary in character, the right to be represented by counsel." (Emphasis added.) 705 ILCS 405/1-5(1) (West 1998).
(There is a narrow constraint on the rights of parties to wardship proceedings with respect to the inspection of court documents. 705 ILCS 405/2-22 (West 1998). However, that constraint is not pertinent to our inquiry.) As K.C.'s parent, Kenya was clearly entitled to exercise the rights specified in section 1-5(1). Kenya, however, mentally ill, had already been adjudicated totally disabled and was under the protection of a plenary adult guardian. The fact is that plenary guardians of adult parents are not themselves expressly named in section 1-5(1) which, as in the instant case, could serve to vitiate the guardians' entitlement to exercise such rights on behalf of their wards under the language of this section. 705 ILCS 405/1-5(1) (West 1998). The issue to be decided is whether Kenya was provided sufficient due process protection in the exercise of her guaranteed rights in light of the failure to name Kenya's guardian as a party respondent and serve her guardian with notice of all relevant proceedings in accordance with section 2-15 of the Juvenile Court Act (705 ILCS 405/2-15(1) (West 1998)).
Analysis must begin with an exploration of the nature of the protection the court intended for Kenya when the court appointed a plenary guardian of the person over her. Guardianship of disabled adults *321 is controlled by the Probate Act (755 ILCS 5/1 et seq. (West 1998)). "[T]he court may adjudge a person to be a disabled person and may appoint (1) a guardian of his person, if because of his disability he lacks sufficient understanding or capacity to make or communicate responsible decisions concerning the care of his person, or (2) a guardian of his estate, if because of his disability he is unable to manage his estate or financial affairs or (3) a guardian of his person and of his estate." 755 ILCS 5/11a-3(a) (West 1998). The legislature has imposed an explicit limitation on the power of the courts to appoint guardians for disabled adults. "Guardianship shall be utilized only as is necessary to promote the well-being of the disabled person, to protect him from neglect, exploitation, or abuse, and to encourage development of his maximum self-reliance and independence. Guardianship shall be ordered only to the extent necessitated by the individual's acute mental, physical and adaptive limitations." (Emphasis added.) 755 ILCS 5/11a-3(b) (West 1998).
"If the respondent is adjudged to be disabled and to be totally without capacity as specified in Section 11a-3, and if the court finds that limited guardianship will not provide sufficient protection for the disabled person * * * the court shall appoint a plenary guardian for the respondent's person." 755 ILCS 5/11a-12(b) (West 1998). "Plenary" is defined as "complete in every respect." Webster's Third New International Dictionary 1739 (1986). Representatives of the office of the state guardian have the "same powers and duties as a private guardian" under the Probate Act. 20 ILCS 3955/32 (West 1998).
The precise scope of the powers and duties of a guardian of the person is set forth in section 11a-17. 755 ILCS 5/11a-17 (West 1998). "An order appointing a limited guardian of the person under this Article removes from the ward only that authority provided under Section 11a-17 which is specifically conferred on the limited guardian by the order [of appointment]." 755 ILCS 5/11a-14(a) (West 1998). A plenary guardian, on the other hand, is vested upon appointment with the entirety of the authority provided under section 11a-17. 755 ILCS 5/11a-14(d) (West 1998).
The decision-making authority of a plenary guardian of the person under section 11a-17 is exceedingly broad. In re Adoption of Savory, 102 Ill.App.3d 276, 278, 58 Ill.Dec. 359, 430 N.E.2d 301 (1981).
"To the extent ordered by the court and under the direction of the court, the guardian of the person shall have custody of the ward and the ward's minor and adult dependent children; shall procure for them and shall make provision for their support, care, comfort, health, education and maintenance, and professional services as are appropriate * * *. * * * The guardian shall assist the ward in the development of maximum self-reliance and independence." 755 ILCS 5/11a-17(a) (West 1998).
See generally In re Guardianship of Mabry, 281 Ill.App.3d 76, 87, 216 Ill.Dec. 848, 666 N.E.2d 16 (1996). The practical effect of this section is that the plenary guardian of the person, under the direction of the court, makes all decisions and exercises all legal rights on behalf of the ward that impact the exercise of the guardian's statutory authority. 755 ILCS 5/11a-17(a) (West 1998). With respect to Kenya, our inquiry therefore narrows to whether the exercise of Kenya's rights under section 1-5(1) of the Juvenile Court Act (705 ILCS 405/1-5(1) (West 1998)) was properly within the scope of the statutory authority of Kenya's plenary guardian under section *322 11a-17 of the Probate Act (755 ILCS 5/11a-17(a) (West 1998)).
In considering the nature of the rights at issue, we find it both self-evident and irrefutable that a parent's right to be a parent is of "deep human importance." In re K.B., 314 Ill.App.3d 739, 748, 247 Ill. Dec. 866, 732 N.E.2d 1198 (2000). "[T]he United States Supreme Court [has] stated that the interest of natural parents in the care, custody, and management of their children is a fundamental liberty interest protected under the fourteenth amendment." In re B.C., 247 Ill.App.3d 803, 806, 187 Ill.Dec. 486, 617 N.E.2d 1207 (1993), citing Santosky v. Kramer, 455 U.S. 745, 747-48, 102 S.Ct. 1388, 1391-92, 71 L.Ed.2d 599, 603 (1982); In re Enis, 121 Ill.2d 124, 128-29, 117 Ill.Dec. 201, 520 N.E.2d 362 (1988). It is this fundamental liberty interest that the due process rights of the parent enumerated in section 1-5(1) of the Juvenile Court Act were codified to protect. 705 ILCS 405/1-5(1) (West 1998).
While nowhere does section 11a-17 of the Probate Act grant a plenary guardian of the person the express authority to exercise on a ward's behalf the rights enumerated in section 1-5(1), the Illinois Supreme Court recently examined the implied authority of a plenary guardian of the person of a disabled adult under section 11a-17. In In re Marriage of Burgess, 189 Ill.2d 270, 271, 244 Ill.Dec. 379, 725 N.E.2d 1266 (2000), the court considered whether such a guardian had standing to continue a dissolution of marriage action filed by the ward prior to both the adjudication of the ward's disability and the guardian's own appointment. In deciding whether an express grant of statutory authority was necessary in such a case, the Burgess court noted that "[i]n other cases involving guardians' authority to make personal decisions on behalf of a ward, Illinois courts have held that the guardians may make such decisions under section 11a-17 even though the power to do so is not specifically enunciated." Burgess, 189 Ill.2d at 273, 244 Ill.Dec. 379, 725 N.E.2d 1266.
The types of decisions that Illinois courts have found to be impliedly supported by section 11a-17 have been of an intensely personal nature and have related to the most intimate issues of the ward's family and health. For example, guardians may decide on behalf of a ward to withdraw artificial nutrition and hydration, potentially resulting in the death of the ward (In re Estate of Longeway, 133 Ill.2d 33, 45-46, 139 Ill.Dec. 780, 549 N.E.2d 292 (1989); In re Estate of Greenspan, 137 Ill.2d 1, 16, 146 Ill.Dec. 860, 558 N.E.2d 1194 (1990)), to consent to the adult ward's own adoption (In re Adoption of Savory, 102 Ill.App.3d 276, 277-78, 58 Ill.Dec. 359, 430 N.E.2d 301 (1981)), and to consent to an abortion on behalf of a disabled ward (In re Estate of D.W., 134 Ill.App.3d 788, 791, 89 Ill.Dec. 804, 481 N.E.2d 355 (1985)).
Thus, there is ample precedent to support the implied authority of a plenary guardian of the person to make personal decisions on a ward's behalf under section 11a-17. Where courts have required an express grant of statutory authority, on the other hand, that requirement has been based on policy reasons and has been "premised on the personal nature of the decision [at issue]." Burgess, 189 Ill.2d at 275, 244 Ill.Dec. 379, 725 N.E.2d 1266. For example, although a guardian must have express authority under section 11a-17 in order to institute dissolution of marriage proceedings on a ward's behalf (In re Marriage of Drews, 115 Ill.2d 201, 205, 104 Ill.Dec. 782, 503 N.E.2d 339 (1986)), the Burgess court held that the implied authority of the plenary guardian under section *323 11a-17 was sufficient to allow the guardian to maintain dissolution proceedings that had already been filed by the ward prior to the adjudication of the ward's disability. Burgess, 189 Ill.2d at 277, 244 Ill.Dec. 379, 725 N.E.2d 1266. The appellate court in Drews expressed concern about the absence of facts in the record before it that would have indicated that the ward intended to dissolve his marriage, as well as the attendant risk that the guardian might be acting against the ward's wishes by initiating dissolution proceedings. In re Marriage of Drews, 139 Ill.App.3d 763, 775-76, 94 Ill.Dec. 128, 487 N.E.2d 1005 (1985). In Kenya's case, however, the question is not whether one spouse might intend to dissolve an otherwise voluntary relationship with another, but whether a parent would choose to fight to keep her children when faced with the prospect of their removal by the State, especially where such a removal might lead to the termination of parental rights. Because Kenya gave birth to K.C. after the court found her disabled and appointed for her a plenary guardian of the person, there had been no clear expression on Kenya's part of her intent to contest such a removal prior to that time. However, given the nature of the issue, we hold that no such prior expression of Kenya's intent was necessary under these circumstances. Absent facts (or a competent waiver) to the contrary, we may presume that any parent would contest such a removal to the limit of that parent's resources and abilities.[4]
The question of whether, either before or after a determination of the parental fitness of the ward, a plenary guardian of the person may consent to the adoption of the ward's minor children is not before us, and we do not reach it here. However, the matter of such consent does provide a useful comparison: "While the risk that a guardian may be acting contrary to a ward's wishes may [potentially] support [a] rule that a guardian's power to [consent to the adoption of the ward's minor children] must be specified by the legislature, this policy consideration does not justify requiring express statutory authority for a guardian to [contest on the ward's behalf the adjudication of the ward's children as wards of the court]." Burgess, 189 Ill.2d at 276, 244 Ill.Dec. 379, 725 N.E.2d 1266.
We therefore hold that the authority of a plenary guardian of the person to exercise the rights granted to that guardian's adult ward in section 1-5(1) of the Juvenile Court Act need not be expressly stated in section 11a-17 of the Probate Act. 705 ILCS 405/1-5(1) (West 1998); 755 ILCS 5/11a-17(a) (West 1998). As to whether such authority may be implied from that which is expressly granted in section 11a-17, we examine the language of the statute, with a view to giving effect to the intention of the legislature. Burgess, 189 Ill.2d at 277, 244 Ill.Dec. 379, 725 N.E.2d 1266. We find it beyond dispute that a ward's status as a parent profoundly affects the ward's "support, care, comfort, health" and "development of maximum self-reliance and independence." 755 ILCS 5/11a-17(a) (West 1998). We therefore find that the authority of Kenya's guardian to exercise Kenya's rights under section 1-5(1) is encompassed within the broad grant of the guardian's authority in section 11a-17. Burgess, 189 Ill.2d at 277, 244 Ill.Dec. 379, 725 N.E.2d 1266.
Although Kenya was able to make known to the trial court her desire to retain her parental rights to K.C., it fell to *324 Kenya's plenary guardian of the person to raise on Kenya's behalf the shield of due process, as embodied in the rights of a parent set forth in section 1-5(1). 705 ILCS 405/1-5(1) (West 1998). To argue that these rights were adequately protected by Kenya's appointed attorney is insufficient: such an argument ignores the statutory obligation of the guardian as protector of the ward. 755 ILCS 5/11a-17 (West 1998).
We therefore hold that the plenary guardian of the person of a disabled adult is a necessary party to proceedings under section 2-22 of the Juvenile Court Act for the adjudication of the disabled adult's minor child to himself become a ward of the court. The plenary guardian is thus entitled to notice of such proceedings in accordance with section 2-15 of that Act. 705 ILCS 405/2-15(1), 2-22 (West 1998).
A pleading that does not name and notify a necessary respondent in a juvenile proceeding fails to invoke the jurisdiction of the court and thereby renders its orders void. In re A.H., 195 Ill.2d at 423-24, 254 Ill.Dec. 737, 748 N.E.2d 183; In re C.R.H., 163 Ill.2d 263, 271-72, 206 Ill.Dec. 100, 644 N.E.2d 1153 (1994); In re J.L.S., 188 Ill.App.3d 815, 816, 136 Ill.Dec. 129, 544 N.E.2d 815 (1989). Kenya's plenary guardian of the person, whom we have determined was a necessary party, was neither named in the wardship petition nor served notice of the proceedings, thereby depriving Kenya of due process in the exercise of her rights under section 1-5(1). The order of the circuit court adjudicating K.C. a ward of the court is therefore void for lack of jurisdiction.
We turn next to the order terminating Kenya's parental rights and appointing a guardian with the power to consent to K.C.'s adoption. Due process dictates that Kenya's plenary guardian of the person was equally a necessary party to the termination proceedings; however, the plenary guardian was neither named as a party respondent in nor served notice of those proceedings. The order terminating Kenya's parental rights and appointing a guardian with the power to consent to K.C.'s adoption is therefore similarly flawed. It is also void.
The courts of this state are called upon to administer the Juvenile Court Act "in a spirit of humane concern, not only for the rights of the parties, but also for the fears and the limits of understanding of all who appear before the court." 705 ILCS 405/1-2(2) (West 1998). To appoint a plenary guardian of the person of a disabled adult and then deny that guardian the opportunity to fully exercise on the ward's behalf the protections of due process that the legislature has seen fit to confer upon the ward does battle with this guiding principle.
For the foregoing reasons, the orders of the circuit court adjudicating K.C. a ward of the court, terminating Kenya's parental rights and appointing a guardian with the power to consent to K.C.'s adoption are reversed.
Reversed.
NOTES
[1] A transcript of the disposition hearing is absent from the record on appeal.
[2] The record is confusing regarding Mr. Schlee's status with respect to Kenya. The order appointing Mr. Schlee is captioned "ORDER APPOINTING ATTORNEY/GUARDIAN AD LITEM," but fails to indicate the precise role to which Mr. Schlee was appointed. The body of the order cites section 11-5 of the Probate Act (755 ILCS 5/11-5 (West 1998)), ostensibly as authority. Section 11-5, however, relates to the appointment of guardians of the person and the estate for minors and does not apply to Kenya. During the March 31, 1998, hearing, the trial court stated, "we are going to appoint a bar attorney as private guardian for [Kenya]." Because no proceedings had been instituted under section 11a-20 of the Probate Act (755 ILCS 5/11a-20 (West 1998)) for the revocation of the letters of office appointing the office of the state guardian as Kenya's plenary guardian of the person, we can only conclude that the trial court intended that Mr. Schlee act as guardian ad litem for Kenya in the termination proceeding. Irrespective of the trial court's March 31, 1998, appointment of Mr. Schlee in whatever capacitybecause the trial court excused Mr. Schlee from service (predicated on the previous appointment of Kenya's plenary guardian) prior to commencing the termination hearing, we need not reach the question of the validity of such concurrent appointments.
[3] The waiver provision in section 1-15 of the Juvenile Court Act (705 ILCS 405/1-15(b) (West 1998)), that any claim of failure to serve a necessary party is waived if not raised prior to the start of any adjudicatory hearing under the Act, has been held unconstitutional (In re C.R.H., 163 Ill.2d 263, 273, 206 Ill.Dec. 100, 644 N.E.2d 1153 (1994)) and does not bar us from considering the basis of the jurisdiction of the circuit court with respect to the wardship proceedings.
[4] In fact, Kenya stated during the termination hearing that she did not wish her rights to K.C. to be terminated and that she wanted the court "[t]o allow [her] to do the necessary things that it takes [sic] for [her] to be with [her] children."