No. 1-06-0465

SIXTH DIVISION
September 28, 2007

No. 1-06-0465

| | |
|---|---|
| *In re* KEYONNE D., a Minor. ) | |
| ) | Appeal from the |
| ) | Circuit Court of Cook |
| ) | County, Illinois, |
| (The People of the State of Illinois, ) | Juvenile Justice Division. |
| ) | |
| Petitioner-Appellee, ) | No. 05 JD 618 |
| ) | |
| v. ) | Honorable |
| ) | Noreen Marie Daly, |
| Keyonne D., ) | Judge Presiding. |
| ) | |
| Respondent-Appellant). ) | |

JUSTICE JOSEPH GORDON delivered the opinion of the court:

Following a hearing in the circuit court of Cook County, respondent, Keyonne D., was adjudicated a delinquent minor and subsequently committed to the Department of Corrections (DOC). On appeal, respondent contends that the failure to serve summons and notice on her father with respect to three supplemental petitions alleging violations of probation, in accordance with the notice requirements of the Juvenile Court Act (Act), deprived the circuit court of jurisdiction, and therefore rendered its orders void. Alternatively, respondent contends that the trial court erred in failing to provide services to treat her with psychological and substance abuse problems before committing her to the DOC. We reverse and remand.

## I. BACKGROUND

On February 2, 2005, the State filed a petition for adjudication of wardship alleging that

1

No. 1-06-0465

respondent was delinquent because on January 17, 2005, she committed the offense of possession of a stolen vehicle knowing that it was stolen in violation of section 4-103(a)(1) of the Illinois Vehicle Code (Code) (625 ILCS 5/4-103(a)(1) (West 2002)). The petition identifies respondent's mother as Celinda Hayes, and provides her address. The petition lists respondent's father as "unknown."[1]

On February 17, 2005, respondent and her mother appeared in court. The court explained the charge of possession of a stolen vehicle, the possible sentence that could be imposed upon a finding of delinquency, and appointed a public defender to represent respondent. Respondent then testified that she lived with her mother, and informed the court that her father's name was David Davis, and that he lived at 537 W. 61st Place, Chicago, IL 60621. The court granted the State leave to amend the petition, and ordered that a summons be sent to the respondent's father. Regarding the charge of possession of a stolen vehicle the court issued an order of home confinement along with mandatory attendance at the evening reporting center.

On April 6, 2005, respondent's father was personally served with a summons to appear and answer the petition on April 19, 2005.

On April 19, 2005, respondent, her mother, and her father appeared in court. Defense counsel indicated that respondent and her mother were "having some difficulties" and that "[m]inor was supposed to be staying with her father now." The father responded that this was

---

[1]The record reveals that the printed word "UNKNOWN" next to the father's name is crossed out in pen, next to which is written, also in pen, "David Davis, 537 W. 61st Place, Chicago, IL 60621."

2

not the case, that respondent indicated that she wanted to live with him and that she could visit him any time that she wanted to, but that the decision "was up to the judge."

Defense counsel indicated that respondent wished to plead guilty to possession of a stolen motor vehicle in exchange for 18 months probation with a 30 day stay of the mittimus, participation in the "Reclaiming Futures" substance abuse program, the victim impact panel and the violence prevention program, and a restraining order "in favor of the CW,"[2] mandatory school attendance, and seven days of the Sheriff's Work Alternative Program (SWAP). The court admonished minor as to the charge against her, her right to a trial and possible sentences that could be imposed upon a finding of delinquency, and the minor plead guilty.

As a factual basis for the charged offense, the State indicated that if called to testify Lieutenant Walsh would testify that on January 17, 2005, he was on patrol near 1 South Halsted in Chicago, when he observed a 1994 Chevy Cavalier with a license plate number 5089754, which had been reported stolen. Lieutenant Walsh would also testify that he observed two occupants inside that vehicle, one being the respondent. Lieutenant Walsh would state that he first observed the cooffender driving the car, but that he then saw respondent switch with the cooffender and begin to drive the car herself. The lieutenant would further testify that when he curbed the vehicle, respondent attempted to flee. According to Lieutenant Walsh's proffered testimony, respondent told the officer that the cooffender was teaching her how to drive, and that he had told her that she should run if the police were to stopped them.

---

[2]It is unclear from the record to whom "CW" refers, but it is possible that it refers to the "complaining witness."

No. 1-06-0465

The State further indicated that if called to testify, Glenn Walbridge would state that he is a resident of Markham, Illinois and the owner of a 1994 Chevy Cavalier, with license plate number 5089754. Walbridge would testify that respondent, whom he would identify in court, did not have permission to be in, to drive, or to operate that vehicle.

Defense counsel stipulated to the factual basis presented. Thereafter the court entered a finding of delinquency on the charge of possession of a stolen motor vehicle, and continued the matter for a social investigation and sentencing on May 31, 2005.

Defense counsel next informed the court that respondent did not appear to be welcome in either of her parents' homes. Respondent's father stated that he did not know whether he "could have custody of [respondent]." Respondent's mother stated that she had no problem with respondent living with her, so long as she followed the rules. Respondent's mother informed the court that respondent had not been attending school, stayed home smoking cigarettes and had friends over while her mother was at work. The court noted that based on a recent confinement report, respondent was coming and going from home as she pleased, and ended up in an altercation that resulted in her being stabbed and taken to the emergency room. Respondent's father, who did not live with the mother, stated that respondent often showed up at his house and that she was welcome to do so. He also asked the court how he should proceed next time respondent appeared at his door in violation of the court's orders pertaining to her in-home confinement. Respondent's mother responded that the father should notify her and indicated that she would "take care of it."

On May 16, 2005, a social investigation report was prepared regarding respondent.

4

According to this report, respondent had a criminal background involving battery, aggravated assault, detention in the juvenile temporary detention center, and commitment to the DOC. According to the report, respondent's mother and father separated when respondent was in third grade, because respondent's mother was able to quit using drugs and respondent's father was not. When interviewed during the preparation of the report, minor respondent stated that she does not get along with her mother and that they fight and yell a lot, and that she gets along with her father, especially when she is not getting along with her mother. Respondent's mother stated that when she tries to set boundaries or limits with her daughter, her daughter will go to her father and her father will give her what she wants.

Respondent also stated that she smoked marijuana with her boyfriend, friends and father, and had received drug treatment in the past through probation. Respondent's mother told the probation officer that she does not allow drugs in her house. When she was questioned about respondent's habit of smoking marijuana with her father, respondent's mother became very upset and said she did not know minor's father was engaging in this type of activity with minor. Respondent stated that she tried to cut back and quit marijuana in the past while in residential placement through Juvenile Courts.

Respondent also stated that her boyfriend often beat her but that she would not press charges against him.

According to the report, respondent was admitted to Riveredge Hospital in April of 2001 because she had been displaying violent behavior at home. While at Riveredge, respondent received individual therapy, group therapy, activity therapy, school therapy, and discharge

therapy. In September 2002, respondent was admitted to Hartgrove Hospital due to her increasingly aggressive behavior at home and school. At Hartgrove, respondent was diagnosed with depression and impulse control disorders and prescribed antidepressants. According to Hartgrove reports, respondent had a history of sexual abuse, which she refused to discuss.

On May 31, 2005, respondent and her mother appeared in court for a dispositional hearing. The court indicated that it received another negative report regarding respondent's compliance with reporting at the evening reporting center. Probation Officer Ferguson testified that since the last court date, respondent had been enrolled in school, but was dropped on May 4, 2005, due to truancy. According to the probation officer, respondent has not been coming home at night, and at daytime she is "just out on the streets." Respondent asked that the court give her a "second chance."

The court ruled that respondent be placed on probation for 18 months. As part of the probationary terms, the court ordered that respondent have no contact with her boyfriend, Tarez Terrell, that she receive domestic violence counseling, attend a victim impact panel, attend a violence prevention program, complete 20 hours community service, attend a girls' group, complete the Treatment Assessment Services evaluation for the Court (a TASC evaluation), attend school and receive family counseling. Additionally, the court issued a 30 day sentence in the Juvenile Detention Center with a stay of the mittimus, in the event that respondent violated the court's probationary terms. The court then admonished respondent of her right to appeal the sentence and the matter was continued.

On July 13, 2005, a notice and petition for supplemental relief was filed stating that (1)

respondent failed to attend summer school on June 22, 23, 24, 27, 28, 29, 30 and July 1 and 6, 2005, and (2) that on July 4, 2005 and July 11, 2005 she left home without her mother's permission. That notice indicated that the matter would be heard on July 19, 2005, and was addressed to respondent, respondent's mother and respondent's father. The record contains a summons directed to respondent and both of respondent's parents. However, the record reflects only that a copy was left with respondent's mother, but does not indicate that service was made upon respondent's father.

On July 19, 2005, respondent and her mother appeared in court regarding the supplemental petition filed by the State alleging that respondent had violated the probation order entered on May 31, 2005. The court admonished respondent and appointed a public defender. The State asked that respondent be held pending a violation of probation hearing because she presented a risk both to herself and the community. Respondent's mother explained to the court that respondent continued to stay out all night and was still seeing her abusive boyfriend. The probation officer indicated that respondent had begun domestic violence counseling. Defense counsel asked that respondent be placed on evening reporting. The court ordered that the minor be held in custody.

On July 28, 2005, respondent and her mother appeared in court. Defense counsel indicated that the parties had reached a plea agreement on the supplemental petition. In exchange for an admission of violation probation on count II (leaving home without permission on two separate days), the respondent would be recommitted to the 18 month probation, with the first year to be in the Intensive Probation Services program ("IPS"), with all the original terms of the

probation to stand. The court admonished respondent, who thereafter pled guilty. The court then ordered home confinement along with an order recommitting respondent to the original terms of probation with the first year to be in IPS.

On August 16, 2005, respondent and her mother appeared in court to assess respondent's progress. The probation officer informed the court that respondent was not complying with the conditions of her home confinement and that her whereabouts were often unknown. Defense counsel indicated that respondent had completed her community service and complied with the TASC evaluation and was drug free. The court entered a new probation order committing respondent to 18 months probation, with the first year involving IPS.

On September 13, 2005, outside of the presence of the parties but in the presence of their respective counsel, the probation officer reported that respondent was doing better on IPS. According to the probation officer's report, respondent had attended all of their mandatory office meetings, she was complying with her curfew, she had started school, she continued to attend a domestic violence group session once a week, and she had completed the violence prevention program.

On September 30, 2005, a second notice for petition and supplemental relief was filed which alleged that: (1) on September 25, 2005, at 6:25 p.m., respondent was absent from her home past her 6 p.m. curfew without parental permission; (2) on September 29, 2005, at 7:40 p.m., respondent was absent from her home without parental permission past her 6 p.m. curfew; (3) on September 19, 2005, at 12:40 p.m. and September 26, 2005, at 1:05 p.m. respondent was absent from school without permission and (4) on September 27 through September 30, 2005, at

9:15 a.m., respondent was absent from school without permission. The notice of the petition and supplemental relief were addressed to respondent and both of her parents and stated that the matter would be heard in court on October 5, 2005. The record contains a summons to appear and answer the petition directed only to respondent and her mother. The record further reflects that on October 1, 2005, the summons was served at respondent's mother's home and left with respondent's brothers, Darnell and Eric. There is no indication in the record that respondent's father was provided any notice of this petition.

On October 5, 2005, respondent and her mother appeared in court. The court admonished respondent regarding the most recent petition for supplemental relief and appointed a public defender to represent her. Respondent pled not guilty and the State asked that she be placed on electronic monitoring in light of her criminal background and the fact that she had violated IPS. The court entered an order placing the minor on electronic monitoring.

On October 20, 2005, a third notice and petition for supplemental relief was filed stating that on October 18, 2005, respondent was absent from her home without permission while on electronic monitoring. The notice was directed to respondent, respondent's mother and respondent's father and stated that the matter would be heard that same day (on October 20, 2005). The record does not contain a summons to appear on the petition. When the matter was heard in court, the probation officer stated that respondent had not been home in the last two days and that her whereabouts were still unknown. The probation officer stated that respondent had cut off her electronic monitoring bracelet. The probation officer also told the court that respondent's mother was unable to attend court that day because of work. Upon the State's

9

No. 1-06-0465

request, the court issued a juvenile arrest warrant for respondent and continued the cause.

On November 4, 2005, the court extended the juvenile arrest warrant to February 10, 2006. On November 10, 2005, respondent appeared before the court after the arrest warrant was executed. The court stated that respondent had cut off her electronic monitoring bracelet and ordered that she be held in custody. The court also ordered that a telephone call be placed to the respondent's mother to notify her that respondent was in custody. There is no record that a telephone call was ordered to be placed to respondent's father.

On November 28, 2005, respondent and her mother appeared in court regarding the two most recent supplemental petitions. The State informed the court that it would be proceeding only with respect to counts I and II on the petition filed on September 30, 2005, and on count I of the petition filed on October 20, 2005.

Probation Officer Ann Marie Coli testified that on September 22, 2005, at 6:25 p.m. and on September 29, 2005, at 7:40 p.m., she attempted to visit respondent in her home, but discovered that respondent was not there despite her 6 p.m. curfew. Officer Coli also stated that on October 18, 2005, she visited respondent's home, and discovered that respondent was gone and that her electronic monitoring box and her electronic bracelet were broken to pieces.

In her own defense, respondent testified that on September 25, 2005, at 6:25 p.m. she was in a restaurant across the street from her house getting food with money that her mother had given her. Respondent also testified that on September 29, 2005, at 7:40 p.m., she was across the hall at a neighbor's house and had told her mother where she had been after she returned home.

The court found that respondent violated probation under all three counts. The court

10

noted that under the IPS order, permission by a parent would not be effective to break the 6 p.m. curfew. In addition, the court held that by a preponderance of the evidence it was more probable than not that the minor had cut off her bracelet and left it at her home, because she was not at home where she was supposed to be under the order.

The State requested that the minor remain in custody pending disposition, and the probation officer agreed, stating that respondent was beyond the control of her mother and her whereabouts were frequently unknown. When questioned by the court as to what she thought about placing the minor on electronic monitoring again, respondent's mother stated that she was opposed to the idea, because she knew that her daughter did not follow rules.

The court nevertheless ordered that respondent be placed on electronic monitoring, and home confinement, as one last testament to her ability to comply with court orders. The court explained to minor that if she violated the terms of the electronic monitoring again at any point before her date of sentencing, she would be committed to the DOC. The court ordered another social investigation report[3] and continued the matter for sentencing on January 11, 2006.

On January 11, 2006, respondent's mother appeared in court and stated that respondent was not in court because she refused to get out of bed. The court ordered a juvenile arrest warrant to issue. Later that day, respondent appeared in court and stated that he mother had failed to wake her up. The court granted a continuance on disposition because the public defender responsible for the case was not present in court. The court also vacated the electronic monitoring order because of a negative report citing dozens of electronic monitoring violations

---

[3]That social investigation report was completed on January 5, 2006.

that respondent had committed since November 28, 2005, and ordered that the minor be held in custody.

On January 18, 2006, a dispositional hearing was held. The State requested that respondent be sent to the DOC because she had exhausted regular probation, because she was completely non-compliant with IPS, because she had violated electronic monitoring and numerous court orders, and because she was a risk to society and herself. Based on the results of the social investigation, Probation Officer Rivas informed the court that since July 28, 2005, respondent continuously exhibited negative behavior, skipped school, had problems at home, had failed to complete the violence prevention and victim trauma programs, and continued to smoke marijuana. Accordingly, the probation officer recommended that she be placed in the DOC.

Defense counsel argued that respondent would benefit from an inpatient drug treatment program. Counsel explained that while in custody respondent had been evaluated by therapist, Shirley Hightower and was found to be in need of inpatient drug treatment. Accordingly, defense counsel asked that the court order this treatment through Gateway before sending respondent to the DOC.

The probation officer revealed to the court that Gateway did in fact evaluate respondent but that they would not accept respondent into the program because of her long history of hospitalization and residential treatment for aggressive behavior and battery. Gateway had suggested a psychological evaluation, but for the time being, considered respondent a possible danger for residential treatment.

Thereafter, the court found that it was in respondent's best interest to be made a ward of

12

the court and recommitted her to the juvenile division of the DOC for an indeterminate period not to exceed her 21st birthday, less 49 days for the time she had already spent in custody prior to sentencing. In doing so, the court stated that respondent had been given ample opportunities to follow the court's orders and had demonstrated that she had no intention in cooperating with the court or with the probation officers. The court also stated that respondent had exhausted the services of the probation department, who worked hard with minors who wished to cooperate, and that she had continually slapped them in the face. Respondent now appeals.

## II. ANALYSIS

On appeal, respondent first contends that the court orders finding her in violation of probation and committing her to the DOC are void, because the failure to serve respondent's father with notice of the juvenile proceedings deprived the circuit court of subject matter jurisdiction. Respondent acknowledges that her father was issued a summons and served with the original petition for adjudication of wardship and that he was present at the original hearing on the delinquency petition, but she contends that he was never served with the three subsequent petitions for supplemental relief alleging respondent's probation violations and resulting in her commitment to the DOC. The State counters that respondent has waived this issue by failing to raise it before the trial court.

We cannot agree with the contention of the State, in light of our courts' consistent refusal to apply the waiver doctrine to circumstances, like here, where the address of the parent was *known* to the State at the beginning of the delinquency proceedings. See In re C.R.H., 163 Ill. 2d 263, 273-274, 644 N.E.2d 1153, 1158-59 (1994) (recognizing that waiver is applicable where the

13

minor fails to raise the lack of notice to a noncustodial parent whose address is unknown, but rejecting the State's attempt to expand that doctrine to a situation where the parent who is not notified is a parent whose "whereabouts are known and who has no actual notice of the proceedings"); *accord*., In re S.L.S., 181 Ill. App. 3d 453, 456-57, 536 N.E.2d 1355, 1357-58 (1989) (held that waiver was inapplicable where the petition contained a statement as to the residence of the noncustodial father who had not been notified of the delinquency proceedings).

This view is fully consistent and in alignment with the decisions of our supreme court which have held that the of lack of notice to a noncustodial parent whose address is known is a jurisdictional defect, which voids any orders made by that court. See In re R.S., 104 Ill. 2d 1, 6, 470 N.E.2d 297, 300 (1984) (holding that "fail[ure] to notify the minor's mother, a named respondent with a known address, of the juvenile proceedings against her son, did not properly invoke the trial court's [subject matter] jurisdiction and [that therefore] *** the court's order of adjudication *** and subsequent orders were void"); In re R.D.S, 94 Ill. 2d 77, 83, 445 N.E.2d 293, 296 (1983) (holding that "[a] pleading that does not name and notify a necessary respondent in a juvenile proceeding fails to invoke the jurisdiction of the court and thereby renders its orders void"). Where a judgment is void it can be attacked at any time and is not subject to the rule of waiver. People v. Thompson, 209 Ill. 2d 19, 26-27, 805 N.E.2d 1200, 1203 (2004) ("[i]t is a well-settled principle of law that a void order may be attacked at any time or in any court, either directly or collaterally"); see also In re K.C., 323 Ill. App. 3d 893, 846, 753 N.E.2d 314, 319 (2001) (noting that "the failure to name and serve a necessary party in a juvenile proceeding *** raises the question not of personal jurisdiction over that party, but of the *subject matter*

14

jurisdiction of the court" and that "[s]uch an objection cannot be waived and may be raised at any time").

We are aware that a number of decisions have applied waiver to the issue of lack of notice to a noncustodial parent in juvenile proceedings, but note that these instances have all been limited to noncustodial parents whose address is *unknown* and where the contention is that the State failed to exercise sufficient diligence in locating the unknown parent. See *e.g.,* In re Tyrone W., 326 Ill. App. 3d 1047, 1050, 762 N.E.2d 1159, 1162 (2002) (holding that "respondent minor waives the issue of the lack of notice to a noncustodial parent unless the minor brings before the trial court the State's failure to *** locate a noncustodial parent whose *** address is not known to the State at the outset of the proceedings"); In re J.P.J., K.B., & J.K., 109 Ill. 2d 129, 137, 485 N.E.2d 848, 851 (1985) (holding that "unless some question is raised in the circuit court regarding the failure to identify or locate a noncustodial parent whose *** address is not known to the State at the outset of the proceedings, the matter is waived and diligence may be assumed"); *accord.,* In re Darren M., 368 Ill. App. 3d 24, 32, 856 N.E.2d 624, 632 (2006) (holding that respondent waived the issue of notice where respondent's mother stated that she knew where respondent's noncustodial father lived, but failed to actually provide the State with the father's address); In re Ricardo A., 356 Ill. App. 3d 980, 988, 827 N.E.2d 894, 901 (2005) (holding that the minor waived the issue of the State's diligence since there was "no evidence [in the record]" that he provided the court with his noncustodial father's address or work telephone number).

In addition, we note that our supreme court has indicated that even where the issue of lack

of notice is waivable, as where the address of the noncustodial parent is unknown, "the rule of waiver *** [is] an admonition to the parties and *not* a limitation on the jurisdiction of reviewing courts." (Emphasis in original). C.R.H., 163 Ill. 2d at 274, 644 N.E.2d at 1158; see also In re Willie W., 355 Ill. App. 3d 297, 299-300, 838 N.E.2d 5, 7 (2005); In re C.H., 277 Ill. App. 3d 32, 34, 660 N.E.2d 545, 547 (1995). A reviewing court may override considerations of waiver in furtherance of its responsibility to provide a just result. C.R.H., 163 Ill. 2d at 274, 644 N.E.2d at 1158. As the court in In re L.C.C., 167 Ill. App. 3d 670, 673, 521 N.E.2d 652, 654 (1988), noted "[a]n increasing number of cases suggest the State is inattentive to the notice requirements of the [Juvenile Court] Act." Based on the foregoing, we are compelled to address the issue on appeal on its merits.[4]

The issue of parental notice in the context of a juvenile proceeding was first examined by the Untied States Supreme Court in In re Application of Gault, 387 U.S. 1, 18 L.Ed.2d 527, 87

---

[4]In that respect, we note that many of our courts have elected to address the merits of the lack of notice even in the context where this issue was waivable, such as where the address of the parent was unknown and the State was criticized for failing to diligently locate him or her. See Willie W., 355 Ill. App. 3d at 299-300, 838 N.E.2d at 7 (electing to consider the merits of the issue of the State's diligence where State learned of the father's telephone number at the minor's arraignment but where the father's address was not provided in the petition); C.H., 277 Ill. App. 3d at 34, 660 N.E.2d at 547 (refusing to apply the doctrine of waiver to the issue of whether the State failed to exercise due diligence in locating the minor's noncustodial father, whose address was unknown, but who regularly paid child support and was employed by DOC ).

16

S.Ct. 1428 (1967). In Gault, the Supreme Court established that the basic requirements of due process and fairness must be satisfied in juvenile proceedings. Gault, 387 U.S. at 30-31,18 L.Ed.2d at 548, 87 S.Ct. at 1445. The Supreme Court held that due process in a juvenile proceeding requires adequate notice to a minor and his parents. Gault, 387 U.S. at 33, 18 L.Ed.2d at 549, 87 S.Ct. at 1446-47. Specifically, in Gault, the Supreme Court found that due process requires that a minor and his parents or guardian be notified, in writing, of the specific charge or factual allegations to be considered at an adjudicatory hearing on delinquency. Gault, 387 U.S. at 33, 18 L.Ed.2d at 549, 87 S.Ct. at 1446. Such written notice must be given at the earliest practicable time and, in any event, sufficiently in advance of the hearing to permit preparation. Gault, 387 U.S. at 33, 18 L.Ed.2d at 549, 87 S.Ct. at 1446.

The Illinois supreme court has adopted the holding in Gault that "due process of law requires that notice in juvenile proceedings be equivalent to that constitutionally required in criminal or civil cases, [citation] and that adequate notice to a minor and his or her parents is a requirement of due process [citation]." C.R.H., 163 Ill. 2d at 269, 644 N.E.2d at 1156.

The Illinois legislature has attempted to fulfill the due process requirement of notice to parents by setting forth precise procedures in the Act to be followed in delinquency cases. According to section 5-520(2)(c)) of the Act, the delinquency petition must set forth the names and addresses of the minor's parents. 705 ILCS 405/5-520(2)(c)) (West 2002). According to section 5-525(a) a summons must be directed to the "minor's parent, guardian or legal custodian and to each person named as a respondent in the petition." 705 ILCS 405/5-525(a) (West 2002). A summons, however, need not be directed to "a parent who does not reside with the minor, does

17

not make regular child support payments to the minor, to the minor's other parent, or to the minor's legal guardian or custodian pursuant to a support order, and has not communicated with the minor on a regular basis." 705 ILCS 405/5-525(a) (West 2002).

In addition, "[a]t any time before dismissal of the [said] petition or before final closing and discharge under Section 5-750 [with respect to commitment of the minor to the DOC], one or more supplemental petitions may be filed (i) alleging new offenses, or (ii) alleging violations of orders entered by the court in the delinquency proceeding." 705 ILCS 405/5-520(4) (West 2002). Section 5-720(1)(c)) provides that if a supplemental petition is filed "charging a violation of a condition of probation *** *the court shall* *** notify the persons named in the petition under Section 5-520 [the original petition], in accordance with the provisions of Section 5-530." (Emphasis added). 705 ILCS 405/5-720(1)(c)) (West 2002). Section 5-530(1) lists the notice requirements applicable to any "supplemental or amended petition or motion," and provides in pertinent part:

> "A party presenting a supplemental or amended petition, or motion to the court *shall provide the other parties with a copy of any supplemental petition*, motion or accompanying affidavit not yet served upon that party, and *shall file proof of that service*, in accordance with subsections (2), (3), and (4) of this Section. *Written notice of the date, time and place of the hearing, shall be provided to all parties* in accordance with local court rules." (Emphasis added). 705 ILCS 405/5-530(1) (West 2002).

Section 5-530(2) sets forth the available methods of service, including personal delivery to

a party or to her attorney, leaving the supplemental petition with a responsible person at the party's residence, or transmitting the petition by facsimile. 705 ILCS 405/5-530(2)(b) (West 2002). In addition, section 5-530(3) provides that "proof of service shall be filed with the clerk," and provides various methods by which service may be provide, *i.e.*, by written acknowledgment of the person served, by affidavit of a person making personal delivery, or by affidavit attesting to service by mail or facsimile. See 705 ILCS 405/5-530(3)(a), (b) (West 2002).

In the present case, the record fails to show that respondent's father received any service or notice whatsoever of the three petitions for supplemental relief, or that such service was even attempted. The record reveals that On July 13, 2005, the first petition for supplemental relief was filed, alleging that respondent violated probation by failing to attend summer school and leaving her residence without permission. Respondent's father's name and address were listed on the supplemental petition and the accompanying summons. However, the record reflects only that a copy of the petition and summons was left with respondent's mother, but does not indicate anywhere that service was ever made upon respondent's father. The record further reveals that on September 30, 2005, and October 20, 2005, after respondent was recommitted to probation, two additional petitions for supplemental relief were filed alleging further violations of probation. Although respondent's father's name and address were listed on both supplemental petitions, the record contains no summons directed to him or other proof that he was served with the supplemental petitions. On November 28, 2005, an adjudication was conducted on the two supplemental petitions and the court found that respondent had violated probation under three separate counts. Respondent's father was not present at this adjudication, or at the dispositional

19

hearing that resulted in respondent's commitment to the DOC. Under the facts presented in this case, we find that the failure to notify respondent's father of the supplemental petitions and the related proceedings was in contravention of the notice requirements of the Act and deprived respondent of her right to due process of law.

In that respect we find our supreme court decisions in R.S., 104 Ill. 2d at 6, 470 N.E.2d at 300, and C.R.H.,163 Ill. 2d at 269, 644 N.E.2d at 1156, illustrative. In R.S., the minor's parents were divorced but lived in the same city, and their addresses were listed in the delinquency petition. R.S., 104 Ill. 2d at 3, 470 N.E.2d at 298. The minor had lived with his mother but was in the sole physical custody of his father at the time of the proceedings. R.S., 104 Ill. 2d at 3, 470 N.E.2d at 298. The minor was found delinquent at a hearing held in the presence of his father. R.S., 104 Ill. 2d at 3, 470 N.E.2d at 298. Even though the mother's address was known, the mother was never served with a summons or notice of the petition, and never appeared at any of the proceedings. R.S., 104 Ill. 2d at 3, 470 N.E.2d at 298. On appeal, the Illinois Supreme Court affirmed the appellate court decision reversing the circuit court judgment finding the minor delinquent and committing him to the DOC, and found that "[n]oncompliance with the notice provisions of the Act *** allowed an adjudication of wardship without notice to a named [noncustodial] parent whose address was contained in the petition, and thus violated the right of parent and child to due process." R.S., 104 Ill. 2d at 6, 470 N.E.2d at 299.

In so holding, the supreme court in R.S. distinguished the case of In re J.W., 87 Ill 2d 56, 429 N.E.2d 501 (1981) as well as other decisions holding that failure to provide service and notice to a noncustodial parent of a delinquency proceeding was excused and did not deprive

20

respondent or the parent of the right to due process, if the identity or whereabouts of the parent were unknown. J.W., 87 Ill. 2d at 58-59, 429 N.E.2d at 502. The court in R.S., indicated that the situation there, where service upon the noncustodial mother could easily have been obtained, since her address was known, from the situation in J.W. where only notice by publication, likely to be futile, could have been given in regard to the father. R.S., 104 Ill. 2d at 5-6, 470 N.E.2d at 299-300.

The court in R.S. then held that the failure to notify the noncustodial parent whose address was known deprived the circuit court of subject matter jurisdiction of the proceedings and made its subsequent orders void. R.S., 104 Ill. 2d at 6, 470 N.E.2d at 300. A three justice minority concurred in the result but concluded that the failure to follow the notice procedure did not deprive the court of subject matter jurisdiction but was merely reversible error. R.S., 104 Ill. 2d at 7, 470 N.E.2d at 300.

Moreover, in C.R.H., our supreme court extended the principles articulated in R.S. to supplemental petitions. In C.R.H., the minor's mother's name was listed in the supplemental petition for an adjudication of delinquency, as well as on the amended supplemental petition alleging new charges for delinquency, but there was no proof in the record that the mother was served with summons. C.R.H., 163 Ill. 2d at 265, 267, 644 N.E.2d at 1154, 1155. In that case, our supreme court held that inadequate notice to a parent whose address is known violated the right of the minor and his parent to receive due process of law. C.R.H., 163 Ill. 2d at 272, 644 N.E.2d at 1157. The supreme court further found that the failure to notify the minor's mother deprived the court of jurisdiction and made all subsequent orders void, including the dispositional

21

order committing the minor to the DOC. C.R.H., 163 Ill. 2d at 272, 644 N.E.2d at 1157.

Similar to our supreme court decisions in C.R.H., and R.S., in In re D.J., this court reversed a delinquency adjudication, finding that it was void, because a noncustodial father whose identity and address were listed in the petition, was not served with the petition. See In re D.J., 175 Ill. App. 3d 491, 494, 529 N.E.2d 1048, 1050 (1988). The court in D.J. further held that the requisite notice to the noncustodial father whose address was listed on the petition could not be excused by the fact that the minor's legal guardian was present at every stage of his juvenile proceedings. D.J., 175 Ill. App. 3d at 494, 529 N.E.2d at 1050.

Pursuant to the above established precedents, we find that in the present case, the failure to serve the supplemental petitions on respondent's father deprived the circuit court of jurisdiction and voided the delinquency probation proceedings below. See R.S., 104 Ill. 2d at 6, 470 N.E.2d at 300 (holding that where the State failed to notify the noncustodial parent whose address was known, the trial court lacked jurisdiction over the proceeding and its order of delinquency was void); C.R.H., 163 Ill. 2d at 272, 644 N.E.2d at 1157 (holding that when the State failed to provide proper notice to the minor's custodial parent on an amended supplemental petition, it failed to invoke the jurisdiction of the court and made all its subsequent orders void, including an order of commitment to the DOC); see also R.D.S., 94 Ill. 2d at 83, 445 N.E.2d at 296 ("[a] pleading that does not name and notify a necessary respondent in a juvenile proceeding fails to invoke the jurisdiction of the court and thereby renders its orders void").

The State nevertheless cites to a line of cases in which, faced with similar circumstances, courts have held that lack of notice to the noncustodial parent was not fatal to the juvenile

proceedings. See Ricardo A., 356 Ill. App. 3d 980, 827 N.E.2d 894; J.P.J., 109 Ill. 2d 129, 485 N.E.2d 848. However, we find these cases inapposite. In each of these cases, the courts cited facts which indicated that the noncustodial parent had not paid child support or had no meaningful relationship with the minor in question, and that it would have been difficult or impossible to locate the noncustodial parent. See Ricardo A., 356 Ill. App. 3d at 988, 827 N.E.2d at 901-902 (respondent indicated that "he did not know where his father lived, and there [was] no evidence as to the amount of contact the two had[,] and certainly no evidence that they maintained regular contact"); see also J.P.J., 109 Ill. 2d at 138-39, 485 N.E.2d at 852 (noting that service on the noncustodial fathers as to each of the three children was impossible because either the noncustodial father's address was not listed in the report of the probation officer, the summons served on the father was returned unopened and with no forwarding address, or the address for the minor's noncustodial father turned out to be an industrial building). The courts then held that the difficulty in locating the noncustodial parent and the lack of a significant relationship between the noncustodial parent and the child excused the State's failure to provide notice to the noncustodial parent. Ricardo A., 356 Ill. App. 3d at 988, 827 N.E.2d at 901-902; J.P.J., 109 Ill. 2d at 138.

Unlike in those cases, in the present case, respondent provided the court with her father's name and address and these were subsequently added to the State's original delinquency petition. In addition, as the State concedes, after being served with this original petition, respondent's father appeared at respondent's first delinquency hearing. As such, there is no reason to conclude that locating respondent's father to serve him with the supplemental petitions would have been

difficult. Moreover, unlike in the cases cited by the State, in the present case, we are unable to state based on the record below that respondent had no significant relationship with her father. The testimony of respondent and respondent's mother, as well as the social investigation report presented to the circuit court, establish that respondent did not get along with her mother, but did enjoy the company of her father, and that each time she argued with her mother she would leave home and spend the night at her father's house. The testimony of respondent's father at the initial adjudicatory hearing also established that he welcomed his daughter in his home, but that he was concerned with the legal custody of the child. In addition, respondent's father indicated his concern for respondent by asking the court what he should do next time respondent violated a court order and left home to spend the night at his house. In light of these facts, we are unable to find that respondent lacked a significant enough relationship with her noncustodial father that would have excused service on him with respect to the three supplemental petitions.

The State nevertheless contends that service on respondent's father with respect to the three supplemental petitions was unnecessary as he was present at the original delinquency proceeding, and merely "chose not to participate after the initial court date." We disagree.

The record below reveals that respondent's father was only served with a summons to appear and answer the original petition for adjudication of wardship. On April 19, 2005, as a result of that summons, the father was present when the court continued the matter for a dispositional hearing on May 31, 2005. Respondent's father was absent from the dispositional hearing, but had he attended, he would have learned that the matter was scheduled for a progress report on August 2, 2005. As the record further reveals, there were no proceedings held on

24

August 2, 2005, because on July 13, 2005, prior to this proceeding, the State filed the first of the three petitions for supplemental relief, charging respondent with various probation violations. Therefore, even if respondent's father had attended all three proceedings that flowed from the original petition and notice, he would have had no way of knowing about the probation violation proceedings, without having been served with summons and the supplemental petitions alleging those violations.

In that respect, we find S.L.S., 181 Ill. App. 3d at 455, 536 N.E.2d at 1357, illustrative. In S.L.S., the appellate court found that failure to serve and notify the minor's noncustodial father of the filing of a petition for adjudication of delinquency, where his name and address were known and listed on that petition, constituted a violation of the minor's right to due process of law and could not be cured by the fact that the father later appeared at the minor's dispositional hearing. S.L.S., 181 Ill. App. 3d at 455-57, 536 N.E.2d at 1357-58. In that respect the court in S.L.S. stated:

"If the issue in regard to the father was merely one of obtaining *personal* jurisdiction over him, perhaps his later appearance would satisfy that question. However, according to the majority opinion in R.S., the service upon or appearance of a parent determines *subject matter* jurisdiction [Citation]. If that is so, the circuit court did not have subject matter jurisdiction to enter the adjudicatory order and that jurisdiction could not be obtained subsequently. Even if the issue is only one of error, as contended by the R.S. minority, the lack of service on or process of the father at the adjudicatory hearing would render the adjudicatory order erroneous and subject to attack on the direct appeal. The R.S. court

25

indicated that the primary purpose of affording the parents an opportunity to be present at significant juvenile delinquency proceedings is the aid the parent can give to the minor. That aid cannot be supplied by a subsequent appearance." S.L.S., 181 Ill. App. 3d at 456-57; 536 N.E.2d at 1357-58.

For the aforementioned reasons, we reverse the judgment of the circuit court and remand for further proceedings not inconsistent with our holding.

Reversed and remanded.

McBRIDE, P.J., and O'MALLEY, J., concur.